**Glen R. HADFIELD, Appellant,**

v.

**RYAN EQUIPMENT COMPANY,**
**Appellee.**

**No. 71–1126.**

United States Court of Appeals,
Eighth Circuit.

March 22, 1972.

John D. Gould, Merchant & Gould, Robert T. Edell, Minneapolis, Minn., for plaintiff-appellant.

Robert E. Clemency, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellee.

Before GIBSON, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Glen R. Hadfield, the patentee and owner of United States Letters Patent No. 3,387,666 [hereinafter '666 Patent], brought this suit for patent infringement against the Ryan Equipment Co., a manufacturer of sod harvesting equipment. The district court, Judge Nordbye, in an unreported opinion, held the '666 Patent invalid for obviousness, and therefore, did not reach the issue of infringement.[1]

1. Although plaintiff Hadfield had initially charged infringement of each of the four claims of the patent, the plaintiff limited his proof to an infringement of claim 3. In fact, plaintiff stated that the charge of infringement of the other claims would stand or fall with the claim 3 evidence of infringement. Accordingly, the district court, at the close of all evidence, granted the defendant's motion to dismiss the case with respect to claims 1, 2, and 4, for want of prosecution.

Claim 3 of the patent at issue discloses:

A self-propelled vehicle having mounted thereon a continuously operating sodfreeing knife reciprocable in the direc-

## I.

### STANDARD OF REVIEW

The district court decision turned on the application of 35 U.S.C. § 103[2] to the device here in question. In Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court enunciated the appropriate guidelines for determining obviousness under § 103 as follows:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. *Id.* at 17–18, 86 S.Ct. at 694.

We recently articulated in Flour City Architectural Metals v. Alpana Aluminum Products Inc., 454 F.2d 98 (8th Cir. 1972), the scope of review of a district court's determination of the obviousness question. In *Flour City* we observed that while the "several basic factual inquiries" are to be reviewed within the confines of Rule 52(a) as findings of fact, the ultimate determination of obviousness vel non is to be reviewed as a question of law. *See Flour City, supra.* Under these principles the district court's findings with respect to the basic factual inquiries will be sustained unless clearly erroneous, and we will render an independent judgment on the issue of obviousness. We turn to a consideration of the scope and content of the prior art, the differences between that art and the '666 Patent claim, and the level of ordinary, relevant skill, as found by the court below.

## II.

### THE PATENT IN ISSUE

The '666 Patent describes a machine which combines the cutting and rolling of sod into one operation. This device allows one man to cut and roll sod strips in a contemporaneous operation. The principal components of the '666 Patent include (1) a wheeled frame which houses the entire assembly; (2) a motorized drive unit; (3) a cutting assembly consisting of a conventional sod cutter, which cuts a continuous ribbon of sod; (4) a transverse planar blade which cuts the ribbon into predetermined lengths and pushes the sod into an initial lap; and (5) a rolling assembly consisting of a trailing rack and roller which catch the initial lap of sod with teeth and continue the rolling until completed.

The allegedly new feature of the '666 Patent relates to the action of the transverse planar blade in initiating the roll-

---

tion of advance of the vehicle for severing a continuous length of sod; a planar, transverse knife to the rear of said sod-freeing knife, aligned therewith and of a width approximating that of said sod-freeing knife; power means operable at predetermined intervals for vertical reciprocation of said transverse knife to sever a sod length, the vertical reciprocation being related to the speed of advance of the machine so as to allow said transverse knife to initiate the roll-up of said sod length during a cycle of such reciprocation; and means mounted independently and to the rear of said transverse knife for encountering the initially rolled-up length and completing the rolling thereof during intervals between such cycles.

2. Section 103 reads:
   A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

ing process. After the blade has completed its downward movement cutting the sod, and begins to retract, the blade, swinging slightly rearward about a pivot and having the rearward motion arrested by a backing roller, catches the leading edge of the cut sod and forces it forward and upward into an initial lap of sod. This initial lap is caught by the teeth in the trailing rack and roller and the sod rolling is continued until completed. Without this blade action in causing the initial lap of sod, the '666 Patent would be unable to roll sod.

### III.

### PRIOR ART

Prior to the issuance of the '666 Patent, persons in the sod harvesting industry used machines to cut the sod into predetermined lengths and width. These sections of sod were then rolled manually. For a number of years, sod growers had recognized the need for some attachment to the usual cutting device which would permit the rolling of sod as it was cut, thus reducing manual labor.

In 1959 Hadfield, the plaintiff herein, obtained a patent, No. 2,872,989, on an apparatus for severing and rolling sections of previously cut sod which lay in one continuous flat strip. In June of 1961, Hadfield was issued another patent, No. 2,987,124 [hereinafter '124 Patent], as a continuation of his copending 1959 patent. His application for the '124 Patent asserted the following:

An object of the invention is to provide a wheel supported traveling frame, equipped with a rotating knife for severing the sod strip lengths and for kicking the severed sod portion at the blade into the initial roll lap so that trailing sod drags can engage the lapped roll and finish rolling the strip in conjunction with frame forward movement; the frame may be self propelled or drawn.

An object of the invention is to provide a blade and shaft revolving oppositely to the direction of frame move-

ment for moving the blade against the severed sod strip in the direction of the frame movement so as to kick the sod into an initial lap and to provide spring means at the blade for driving the blade into the sod.

Thus, the '124 Patent disclosed a method of rolling cut sod contemporaneously with the cutting process. Hadfield did not actually construct a sod rolling machine in accordance with the '124 Patent specifications until after issuance of the '124 Patent. In operating that machine, Hadfield discovered that the upward and forward movement of the transverse planar blade after cutting a length of sod did not initiate a lap of sod in the manner anticipated. According to Hadfield, the defect in the '124 Patent was that, after cutting a length of sod, the blade swung backward and failed to contact the edge of the cut sod with appropriate and sufficient force to produce the initial lap required for rolling.

The defendant had placed in commercial use prior to the '666 Patent a sod cutter known as the Ryan Model CDV–2 which also employed a transverse planar blade to cut sod strips into predetermined lengths. This sod cutter, however, was not intended to, and did not, initiate a sod roll.

The trial court found that the '124 Patent and the Ryan Model CDV–2 both disclosed to the sod harvesting industry the concept of using a planar blade to transversely cut a strip of sod. In addition, the trial court found that the '124 Patent disclosed the concept of initiating a sod roll by coordinating the vertical ascent of the planar blade with the forward movement of the machine so that the blade would cause the necessary initial sod lap. Appellant argues that since a machine constructed in the manner specified in the '124 Patent did not work successfully in rolling sod, it would not be obvious to combine the structure of this earlier patent and the Ryan sod cutting machine to arrive at a method of combining all sod cutting and rolling operations as in the '666 Patent.

■ The alleged unworkability of the '124 Patent prototype does not preclude its relevance in ascertaining the scope and content of the prior art. *See, e. g.,* Sutter Products Co. v. Pettibone Mulliken Corp., 428 F.2d 639, 646–647 (7th Cir. 1970); Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 267 (2d Cir. 1967); Zephyr American Corp. v. Bates Manufacturing Co., 128 F.2d 380, 385 (3d Cir. 1942); Application of Boe, 355 F.2d 961, 965, 53 C.C.P.A. 1079 (1966). In Bullard Co. v. Coe, 79 U.S.App.D.C. 369, 147 F.2d 568, 568–569 (1945), the court observed:

> In order to show that the appealed claims are inventive it was necessary for appellants to prove that [the prior patent] (1) was not operative and (2) could not be made operative by slight changes within the skill of a competent mechanic * * *.

As found by the district court, the '124 Patent disclosed the concept of using the transverse planar blade to initiate the rolling process, leaving only a mechanical problem of restricting the rearward swing of the planar blade, and adjusting the speed of its ascent in relation to the forward motion of the cutter, to overcome prior failures. Hadfield carried the burden of proving that workability of the '124 Patent could not be achieved by simple mechanical adjustment. The district court was justified in determining that "the use of a planar blade * * * to initiate a rollup of the sod was old in the art * * *," notwithstanding appellant's lack of success in operating the '124 Patent device.

## IV.

### LEVEL OF ORDINARY SKILL

In order to solve the mechancal problem of synchronizing the up and down movement of the planar blade with the forward movement of the cutter, the '666 Patent utilized a cycle clutch mechanism to control the vertical movement of the planar blade which had been previously disclosed by the Kindlien Patent No. 3,061,059, issued in October 1962. This being the case, the principal feature which the '666 Patent possessed over the prior art was a roller attached immediately behind the planar blade so that the blade would go up and down and not back and forth as in the '124 Patent. The district court concluded, and we agree, that because the planar blade could not initiate the rolling process unless it came in contact with the edge of the cut sod, the necessity of a restraint such as that utilized in the '666 Patent to arrest the rearward swing of the blade was within the knowledge of one ordinarily skilled in the art.

## V.

### OBVIOUSNESS

■ The above findings drawn from the basic factual inquiries of the district court are supported by substantial evidence on the record and cannot, therefore, be reversed as clearly erroneous. *See* Fed.R.Civ.P. 52(a). Given these findings of fact, we are led to the inescapable legal conclusion that the '666 Patent would have been obvious to one ordinarily skilled in the art.

■ In asserting that the '666 Patent was not obvious within the purview of § 103, appellant emphasizes the long-felt need in the sod harvesting industry for a machine to simultaneously cut and roll sod, and the failure of others to meet that need. Such considerations are relevant as secondary tests for obviousness vel non, *see Graham, supra,* 383 U.S. at 17, 86 S.Ct. 693, "[b]ut where as here, the facts establish convincingly that the invention was obvious against the background of the relevant prior art, [these considerations] cannot be controlling." Cummins Engine Co. v. General Motors Corp., 299 F.Supp. 59, 89 (D.Md.1969), aff'd, 424 F.2d 1368 (4th Cir. 1970); *see Flour City, supra,* 454 F.2d at 100. We, therefore, sustain the district court decision that the '666 Patent is invalid for obviousness.

## VI

### ATTORNEY'S FEES

■ Appellee contends that the trial court erred in denying an award of reasonable attorney's fees under 35 U.S.C. § 285 and Fed.R.Civ.P. 37(c). Appellee, however, took no cross-appeal from the district court decision, and it is well established that an appellee, in the absence of a cross-appeal, cannot "attack the [trial court's] decree with a view either to enlarging his own rights thereunder or * * * lessening the rights of his adversary * * *." Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 328, 81 L.Ed. 593 (1937); *see, e. g.*, Securities and Exchange Commission v. Fifth Avenue Coach Lines, Inc., 435 F.2d 510, 516 (2d Cir. 1970); United States of America, Inc. v. Fireman's Fund Insurance Co., 420 F.2d 337, 340 (8th Cir. 1970); Southern Agency Co. v. LaSalle Casualty Co., 393 F.2d 907, 915 n.7 (8th Cir. 1968); State Farm Mutual Automobile Insurance Co. v. Pennington, 324 F.2d 340, 344–345 (8th Cir. 1963).

The judgment of the district court is accordingly affirmed in all respects.

Hays, Circuit Judge, dissented and filed opinion.