# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 04-6040 MN

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| James W.  and Sherri L. Ladd, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| | * | Appeal from the United States |
| James W. and Sherri L. Ladd, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Charles W. Ries, | * | |
| | * | |
| Defendant-Appellee. | * | |
| | * | |

———

Submitted:  December 1, 2004
Filed: February 1, 2005

———

Before SCHERMER, FEDERMAN, and MAHONEY, Bankruptcy Judges.

———

SCHERMER, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court[1] entered on June 21, 2004, sustaining the objection of Charles W. Ries, Chapter 7 Trustee ("Trustee") to the amended claim of homestead exemption filed by debtors James W. and Sherri L. Ladd ("Debtors"). For the reasons stated below, we affirm.

## I. Standard of Review

The facts are not in dispute. The allowance or disallowance of an exemption is subject to *de novo* review. *Drenttel v. Jensen-Carter (In re Drenttel)*, 309 B.R. 320, 322 (B.A.P. 8th Cir. 2004); *Williams v. Bradley (In re Bradley)*, 294 B.R. 64, 68 (B.A.P. 8th Cir.). Likewise, the application of *res judicata* is subject to *de novo* review. *Banks v. Int'l Union Electronic, Electrical, Technical, Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004); *Sianis v. Jensen*, 294 F.3d 994, 999-1000 (8th Cir. 2002).

## II. Background

The Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 26, 2002. The Debtors reside on approximately 127 acres of contiguous farmland in rural Rock County, Minnesota (the "Property"). They earn rental income from agricultural operations on the Property. The Debtors filed schedules and statements accompanying their petition including a Schedule C in which they asserted a homestead exemption in the Property under 11 U.S.C. § 522(d)(1).[2]

---

[1] The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

[2] Minnesota law permits debtors in bankruptcy to claim either the federal exemptions available under 11 U.S.C. § 522(d) or the state exemptions available

(continued...)

2

On December 3, 2002, the Trustee filed an objection to the claimed homestead exemption. The Debtors did not respond to the objection nor appear at the hearing thereon. The bankruptcy court entered its order dated January 13, 2003 ("January 2003 Order") sustaining the Trustee's objection and disallowing the Debtors' homestead exemption.

On April 23, 2004, approximately fifteen months after entry of the January 2003 Order, the Debtors filed an amended Schedule C asserting a homestead exemption in the Property under the Minnesota homestead law. The Trustee objected to the amended Minnesota homestead exemption.

At the hearing on the objection to the amended exemption, the Debtors explained that they did not respond to the Trustee's objection to the federal homestead exemption because they believed they had an absolute right to amend their exemptions pursuant to Federal Rule of Bankruptcy Procedure 1009(a). The court sustained the Trustee's objection on *res judicata* grounds and disallowed the Debtor's state homestead exemption. This appeal followed.

## III. Discussion

This is a simple case of *res judicata*. The doctrine of *res judicata* bars a later suit where (1) an earlier suit resulted in a final judgment on the merits; (2) the earlier suit was based on proper jurisdiction; (3) both suits involve the same cause of action; and (4) both suits involve the same parties or their privies. *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983). *Res judicata*, also known as claim preclusion, bars the

[2](...continued) under Minnesota law. Under 11 U.S.C.§ 522(b) a debtor may elect federal or state exemptions unless the state opts out of the federal exemption scheme. Minnesota has not opted out of the federal exemption scheme; therefore debtors domiciled in Minnesota may elect either option.

relitigation of issues which were actually litigated as well as issues "which *could* have been litigated in the first suit." *Id.*(emphasis in original). Here, the Debtors' entitlement to a homestead exemption was litigated when the Trustee objected to their federal homestead exemption. The Debtors do not dispute that the January 2003 Order was final, that the earlier objection involved the same parties, or that the court exercised proper jurisdiction when it entered the January 2003 Order. The Debtors dispute that the objection to the federal exemption and the objection to the state exemption are the same cause of action. We disagree.

The Debtors argue that *res judicata* does not apply to bankruptcy motions. They try to distinguish a civil lawsuit from a contested matter within a bankruptcy proceeding, arguing that a civil lawsuit is similar to an entire bankruptcy proceeding, not an isolated contested matter within the bankruptcy proceeding.[3] They note that amendments are routine in civil litigation and argue that the second claim of exemption is merely an amended pleading within the bankruptcy proceeding. We agree that amendments are routine in civil litigation and that motions to amend should be freely granted. Fed. R. Civ. P. 15(a). Likewise, relief which was not specifically pleaded may be granted at trial as long as the evidence demonstrates an entitlement to such relief. Fed. R. Civ. P. 54(c). These rules apply in the bankruptcy context as well as in federal civil litigation. Fed. R. Bankr. P. 7015, 7054. The problem with the Debtors' argument is that a bankruptcy motion is the equivalent of a civil lawsuit; to allow the Debtors an amended exemption after entry of the January 2003 Order is

---

[3] If the Debtors' argument that a contested matter is not the equivalent of a civil lawsuit were correct, then the order sustaining the Trustee's objection to their exemption would not be a final order and they would have no right to this appeal. Such is not the case. *McGowan v. Ries (In re McGowan)*, 226 B.R. 13, 16 (B.A.P. 8th Cir. 1998). See, also *Huebner v. Farmers State Bank, Grafton, Iowa (In re Huebner)*, 986 F.2d 1222, 1224 (8th Cir. 1993), *cert denied*, 510 U.S. 900, 114 S.Ct. 272 (U.S. Oct. 4, 1993)(No. 93-5597), holding that an order denying a claimed exemption was final for purposes of appeal.

akin to allowing a party to add a new claim to a complaint after trial and entry of a judgment. While liberal amendments are permitted in federal civil litigation and relief can be granted even if not originally pleaded, once judgment has been entered new claims generally cannot be raised and new theories cannot be argued. Similarly, liberal amendments are permissible in the bankruptcy context and the bankruptcy court may grant relief not specifically pleaded in the motion prior to entry of an order or judgement resolving the matter. However, once a matter has been decided, the parties cannot later assert a new theory to obtain the relief which they have already been denied by a final court order.[4]

The procedural rules which the Debtors cite support our conclusion that once an objection to an exemption is filed, a debtor must raise all theories under which the asset in dispute may be exempted in the context of the resolution of the objection. An objection to an exemption is a contested matter under Federal Rule of Bankruptcy Procedure 9014. Federal Rule of Civil Procedure 54 applies in contested matters. Fed. R. Bankr. P. 9014(c), 7054. The order resolving the objection to the exemption is a final judgment. Fed. R. Civ. P. 54(a). Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings. Fed. R. Civ. P. 54(c). Consequently, if an objection to an exemption is filed, the debtor has the right to prove his or her entitlement to exemption of the asset at the hearing and the court may allow the exemption under any theory which the debtor proves at trial. Once an objection to the exemption of an asset has been filed, the debtor must raise all theories for the exemption of that asset prior to the resolution of the exemption issue. Otherwise *res judicata* prevents a later attempt to exempt the asset on a different theory.

---

[4] The limited avenues for post-judgment relief are set forth in Federal Rules of Civil Procedure 59 and 60. Those rules apply in the bankruptcy context pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024. The Debtors have not attempted to seek relief under those options.

5

The Debtors also argue that Federal Rule of Bankruptcy Procedure 1009 gives them the right to amend their exemptions at any time prior to the closing of their bankruptcy case. This is true. They have the right to file an amended Schedule C asserting exemptions at any time before their case is closed. Fed. R. Bankr. P. 1009(a). However, this does not mean any exemption they assert will be allowed. The Debtors confuse the filing of a schedule of exemptions with the allowance of an exemption.[5] Even though the Debtors may be able to file a new schedule of exemptions, Rule 1009 does not prevent the Trustee from objecting to a newly asserted exemption nor does it prevent the bankruptcy court from denying a new theory for exempting property on the grounds of *res judicata* where the court has already ruled on the exemptibility of such property.[6]

The application of *res judicata* in the context of bankruptcy exemptions is not new. At least two bankruptcy judges from the District of Minnesota have published opinions applying *res judicata* to prevent a second attempt to exempt an asset after

---

[5] "[T]he right to amend schedules to add exemptions 'is not the same as the right to the exemption.'" *Knupfer v. Wolfberg (In re Wolfberg)*, 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000), quoting *Andermahr v. Barrus (In re Andermahr)*, 30 B.R. 532, 534 (B.A.P. 9th Cir. 1983).

[6] The dissent compares Rule 1009(a) to Federal Rule of Bankruptcy Procedure 3008 and to Sections 1112(b)(5), 1208(c)(5), and 1307(c)(5) of the Bankruptcy Code. However, none of these provisions is applicable. Rule 3008 governs the reconsideration of an order allowing or disallowing a claim. Such reconsideration is expressly authorized in Section 502 of the Bankruptcy Code. 11 U.S.C. § 502(j). Sections 1112(b)(5), 1208(c)(5), and 1307(c)(5) of the Bankruptcy Code acknowledge modifications of plans in cases under Chapters 11, 12, and 13. Modification of plans in Chapters 11, 12, and 13 are likewise expressly authorized in the Bankruptcy Code. 11 U.S.C. §§ 1127(b), 1229, and 1329. The Bankruptcy Code also expressly authorizes the revocation of a confirmation order in a Chapter 11 case. 11 U.S.C. § 1144. In contrast, the Bankruptcy Code does not authorize the reconsideration of an order allowing or disallowing an exemption. Rule 1009(a) should not be construed to provide relief not available under the Bankruptcy Code.

6

the entry of an order sustaining an objection to an earlier asserted exemption of the same asset. *In re Walls*, 249 B.R. 506, 508 (Bankr. D. Minn. 2000)(Kishel, J.)("[T]he adverse ruling on the Debtors' prior claim of exemption does indeed preclude them from raising a different substantive basis to exempt the same asset.") ; *In re Marshall*, 224 B.R. 399, 400 (Bankr. D. Minn. 1998)(Kressel, J.)("Because the debtor's claim that the [asset] is exempt has already been litigated and decided by a final judgment, principles of *res judicata* prohibit the debtor from relitigating the exemptibility of the [asset], even if he can come up with a new theory.").[7]

The Debtors argue that the applicability of *res judicata* to exemptions places them in an impossible position because the bankruptcy judge before whom their case is pending does not allow alternative pleading of exemptions. In support of their argument, the Debtors cite *In re Cochrane*, 178 B.R. 1011 (Bankr. D. Minn. 1995)(Kishel, J.). We disagree with the Debtors' interpretation of *Cochrane.*

In *Cochrane*, the debtor owned a condominium in Florida and asserted a homestead exemption in the condominium under Florida law. During the course of the hearing on several objections to the homestead exemption, the debtor's counsel "opined in passing" that in any event the debtor was entitled to exclude or exempt the condominium under a tenancy by the entireties theory. *Id.* at 1015. The court sustained the objections to the homestead exemption and entered a separate order determining that "thus far" the debtor had not formally claimed protection for any of his assets under the Florida law of tenancy by the entireties and directed him to serve and file an amended Schedule C to make that claim if he intended to do so. *Id.* The court directed the debtor to file an amended Schedule C no later than a date certain, "setting forth his final election as to his claims of exclusion or exemption in all of this

---

[7] See also *In re Wolfberg*, *supra*, and *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253 (B.A.P. 9th Cir. 1988), applying *res judicata* in the claim exemption context.

[*sic*] assets. For the remaining pendency of this bankruptcy case, the Debtor shall have no right to file a further amended Schedule C." *Id*. at 1017. In that order, the court noted that the debtor "should not be allowed to play an extended game of 'hide the ball.'" *Id*. In response to the order, the debtor filed an Amended Schedule C asserting exemptions under Florida law and an Alternative Schedule C asserting exemptions under Minnesota law. The court held that the debtor's tactic for attempting to assert alternative exemptions at that juncture was "just the sort of maneuvering that the Court sought to prohibit" in the earlier order. *Id*.

The *Cochrane* court noted that no basis exists in the Federal Rules of Bankruptcy Procedure for proposing an alternative claim of exemptions at the same time as one asserts a main claim in a Schedule C. The Debtors rely on this statement of the court for their argument that the judge does not allow alternative pleadings of exemptions. We disagree. First of all, the statement must be kept in context. The ruling disallowing the "alternative theories" was based on the debtor's violation of the prior order requiring the debtor to make a final election with respect to exemptions. The statement regarding whether the rules countenance alternative exemptions was dicta. Second, the *Cochrane* court had already given the debtor a second bite at the apple after losing his first attempt at exempting his property by directing the debtor to file any amended schedule of exemptions by a date certain. Third, in the present case, at the hearing on the objection to the Debtors' state exemption, the court acknowledged that a "claim [of exemption] may be resolvable by application of law in the alternative." (Transcript, p.11.)[8] Finally, the Debtors

---

[8] The judge presiding over the Debtors' case published the *Walls* opinion applying *res judicta* in the exemption context five years after the *Cochrane* decision. In the present case, he acknowledged the application of alternative theories of resolving an objection to an exemption. We simply disagree with the Debtors and with the dissent that the Debtors could not have sought the allowance of a homestead exemption under state law at the time of the hearing on the Trustee's original

(continued...)

8

have not demonstrated any evidence that they attempted to plead alternative bases for exempting their homestead at any single point in time. Upon the filing of an objection to a federal exemption, it would be appropriate for a debtor to respond as to the merits of the objection, but to also ask, in the alternative, that the debtor be allowed an exemption under state law. At the hearing, the debtor would have the opportunity to establish entitlement to an exemption under either theory or, if denied the right to present evidence on the alternative theory, the opportunity to make an offer of proof to preserve rights on appeal under that theory. The bankruptcy court's decision would be subject to review under either theory of exemption. Here, however, the Debtors filed no response of any sort to the Trustee's objection, so they failed to preserve the right to assert the state law exemption.

An opinion on the issue of successive claims of exemptions would be incomplete without a mention of *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885 (8th Cir. 2002). In *Kaelin*, the debtor listed a claim against his insurance company as an asset of his estate and asserted an exemption with respect to the claim. The trustee and creditors objected to the exemption. The matter was settled with a consent order determining that the claim against the insurer was non-exempt property. The trustee hired counsel to pursue the claim against the insurer. The trustee later amended the employment application to expand the scope of counsel's employment to include a malpractice claim against the debtor's pre-petition personal injury attorney. The debtor had been previously unaware of the possible malpractice claim and within a week of learning of its existence filed an amended schedule of assets and filed a motion for leave to amend his Schedule C to assert an exemption with respect to the claim. The bankruptcy court denied the motion for leave to amend the exemption schedule as being in bad faith. The Eighth Circuit Court of Appeals reversed. The court noted the general rule allowing liberal amendment of exemption claims, but

---

[8](...continued)
objection to the federal homestead exemption.

acknowledged that the right to amend is not absolute. Bad faith and prejudice to creditors are two exceptions to the liberal right to amend exemptions. The court concluded that neither existed in that case and therefore reversed the denial of the debtor's motion to amend exemptions.

The facts in *Kaelin* differ substantially from the case at hand. In *Kaelin*, the debtor became aware of an asset during the course of his bankruptcy proceeding and promptly scheduled the asset and attempted to exempt it. *Kaelin* involved the exemption of an asset that the debtor had not previously exempted. *Res judicata* was not applicable because there had been no litigation regarding the exemption of the newly discovered and newly exempted asset. *Kaelin* does not control the present situation and its holding does not preclude the application of *res judicata* in the exemption context.

Similarly, the recent decision of this court in *Ardrey v. Blackwell (In re Ardrey), 316 B.R. 531 (B.A.P. 8th Cir. 2004),* merits mention; however, it likewise has no affect on the application of *res judicata* in the present case. In *Ardrey*, the debtor scheduled an exemption of $1,000 in tax refunds. The debtor later received a tax refund in excess of $1,000. The trustee sought and obtained an order directing the debtor to turn over the excess tax refund which the debtor had not exempted. The court found that the debtor had not exempted the excess tax refund and entered a judgment directing the debtor to turn the excess refund over to the trustee. After entry of the judgment, the debtor amended her schedules to assert an exemption in the excess tax refund under a statute pursuant to which the debtor had not previously sought any exemption. The trustee objected to the amended exemption. The bankruptcy court sustained the objection because the trustee had substantially administered the asset prior to the asserted exemption and to allow the exemption at that juncture would be unduly prejudicial to creditors. On appeal, the BAP held that the trial court erred when it found that the trustee had substantially administered the asset and therefore reversed the order sustaining the objection to the exemption.

*Ardrey*, like *Kaelin*, did not involve *res judicata*. In *Ardrey* the trustee had not previously objected to the debtor's exemption of her tax refund. Therefore, no final judgment on the issue of the exemptibility of the debtor's tax refund existed. Consequently, *res judicata* did not apply.

We acknowledge the harshness of the result in this case. Had the Debtors timely asserted a homestead exemption under Minnesota law in response to the objection to the federal exemption, the Trustee admits that he would not have objected to the state exemption. However, the Debtors failed to respond to the objection, despite law in Minnesota holding that the resulting order would have *res judicata* effect. Unfortunately, the Debtors' failure to consider the doctrine of *res judicata* does not undo its effect nor change the result in this case.

## IV. Conclusion

In conclusion, this is a simple case of *res judicata*. A debtor's right to liberally amend schedules does not override the application of *res judicata* which in this case prevents the Debtors from seeking to revisit the issue of the exemptibility of their homestead. If the Debtors believed they were entitled to a homestead exemption under any theory, including a theory other than the one asserted in their original Schedule C, they should have raised the issue in response to the Trustee's objection to their original federal homestead exemption. The Debtors cannot wait more than a year after the court decided the issue and attempt to relitigate the matter under a new theory. The order sustaining the Trustee's objection to the Debtor's state homestead exemption is AFFIRMED.

MAHONEY, Bankruptcy Judge, dissenting.

I respectfully dissent. The majority finds, as did the trial court, that once a decision is made denying a claim of exemption under the federal exemption statute,

11

the debtors are forever after precluded from amending their claim of exemption to obtain the benefits of the Minnesota exemption statutes. Such a determination is based upon a misapplication of the "res judicata" doctrine or the "claims preclusion" doctrine. To reach such a result, the majority, as did the trial court, treat the denial of a claim of exemptions as if it is analogous to ordinary civil litigation in the federal courts. By treating the contested claim of exemption as ordinary civil litigation, the majority finds that the doctrine of res judicata bars a later suit where (1) an earlier suit resulted in a final judgment on the merits; (2) the earlier suit was based on proper jurisdiction; (3) both suits involve the same cause of action; and (4) both suits involve the same parties or their privies. Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir. 1983).

In Lovell, it was made clear that the doctrine prohibits relitigation of issues which were actually litigated as well as those "which *could* have been litigated in the first suit." Id. (emphasis in original).

However, as the Eighth Circuit Court of Appeals noted in Huebner v. Farmers State Bank (In re Huebner), 986 F.2d 1222 (8th Cir. 1993), *cert denied*, 510 U.S. 900, 114 S.Ct. 272 (U.S. Oct. 4, 1993)(No. 93-5597), "[f]inality for bankruptcy purposes is a complex subject." Id. at 1223. In Huebner, the court gave a practical example of "why at least most exemption decisions should be final orders" under the finality standards set out in prior case law. Id. at 1224. Although discussing the matter generally, the court did not hold that all exemption decisions are final orders. In addition, the court did not suggest that exemption litigation decisions were final orders which were analogous to orders entered in ordinary civil litigation which would preclude further activity with regard to a debtor's claim of exemption.

I suggest that a contested matter dealing with a claim of exemption under the federal statute and an objection by the trustee is much more analogous to the filing of a proof of claim by a creditor and an objection by an interested party. In such a

12

contested matter, even after a determination favorable to or adverse to the claimant, Federal Rule of Bankruptcy Procedure 3008 permits reconsideration of such an order when a request is made by a party in interest. Rule 1009(a), which gives the debtor the right to amend a petition, list, schedule or statement as a matter of course at any time before the case is closed, is of the same ilk as Rule 3008 which gives the creditors, the trustee, or the debtor a second bite at the apple with regard to claims allowance or denial.

Similarly, the Bankruptcy Code itself permits amendment to Chapter 11, Chapter 12, and Chapter 13 plans after the initial plans have been contested and rejected by the court. See 11 U.S.C. § 1112(b)(5); § 1208(c)(5); § 1307(c)(5); Lewis v. United States, 992 F.2d 767, 772 (8th Cir. 1993) (a bankruptcy court order that neither confirms a plan nor dismisses the underlying petition is not final); Vincent v. Fairbanks Capital Corp. (In re Vincent), 301 B.R. 732 (B.A.P. 8th Cir. 2003) (motion denying debtor's motion to modify a confirmed Chapter 13 plan is no more a final order for appeal purposes than an order denying confirmation of a plan); Michels v. Maynard Sav. Bank (In re Michels), 305 B.R. 868, 871 (B.A.P. 8th Cir. 2004) (because the appeal was from an order which both denied confirmation of a Chapter 12 plan and dismissed the case, the appeal was from a final appealable order.). Each of the statutory sections referred to above permit the court to convert or dismiss the case, whichever is in the best interest of creditors and the estate, for cause, if the court has determined that it should not permit the debtor additional time to file another plan or modify the current plan. This statutory language assumes the initial order denying confirmation of a plan under any of these chapters is not a final order to which res judicata applies. The cited case law confirms the assumption.

Next, even if one assumes that the res judicata doctrine applies, it only applies if the issue being raised in the second "lawsuit" could have been litigated in the first suit. Lovell v. Mixon, 719 F.2d at 1376. Because the available relief in the federal exemption statute is significantly different from the relief available in the Minnesota

statutes, it is my position that they are different "causes of action" and could not have been litigated in the initial contested matter concerning the claim of exemption under the federal statute.

If, on the other hand, the federal and state statutes do not constitute separate causes of action, but simply alternative relief that should have been pleaded in the first contested matter, the debtors face another problem. In the District of Minnesota, by virtue of the Marshall and Walls decisions relied upon by the majority and the Cochrane decision to which the majority gives very little consideration, a debtor must choose whether to proceed with a claim of exemption under the federal statute or the Minnesota statutes, and the debtor is precluded from presenting a claim under an alternative statutory scheme. Although the majority suggests that the trial court acknowledges the right of debtors to plead in the alternative, and the majority suggests any contrary language in Cochrane is "dicta," the language in Cochrane is clear and to the point. Any lawyer who would attempt to list claims of exemption under the federal statute and, alternatively, under the Minnesota statute, would, by virtue of Cochrane, risk sanctions under Rule 9011. The Cochrane language I refer to is as follows:

> Second, there is no basis under the Federal Rules of Bankruptcy Procedure for proposing an "alternative" claim of exemptions at the same time as one asserts a "main" claim in a Schedule C. The underlying though[t] could be tagged as, "well, if you don't like that theory, how do you like this one?" This little dodge, however, runs entirely contrary to the clear purpose of Fed. R. Bankr. P. 2007, 4003(a), and 1009: to provide a procedural framework for the raising of exemption issues one at a time, and not two-or-more at a time. The vehicle for this assertion of exemption rights is just not countenanced under the applicable rules or the prescribed forms, and the Debtor is out of bounds for using it.

178 B.R. at 1017-18.

14

The majority, although dismissing such language as "dicta," in this case has fashioned a procedure by which it suggests counsel for debtors may evade the clear import of <u>Cochrane</u>. The majority tells counsel for debtors to ignore <u>Cochrane</u> and plead in the alternative, thereby preserving all appeal rights in case a bankruptcy judge in Minnesota decides the <u>Cochrane</u> language is good precedent and follows it.

Rather than promulgating a procedure which suggests that debtors may somehow get around the <u>Cochrane</u> language, the majority should simply overrule <u>Cochrane</u> to the extent it can be construed to mean debtors cannot plead a claim of exemption under both federal and state laws in the alternative. Of course, such a procedure as suggested by the majority, and an order overruling <u>Cochrane</u> as I suggest, would both be totally unnecessary if the majority would simply acknowledge that litigation of contested matters is, under the Bankruptcy Code and the Bankruptcy Rules, much more complex and much more liberal with regard to amendments than is ordinarily the case with general civil litigation. With such an acknowledgment, the majority would, as I would, reverse the decision of the trial court and remand for a determination of the rights of the debtors with regard to a claim of exemption under the Minnesota statutes.

_____