# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1606

_____

| | | |
|---|---|---|
| In re: James W. Ladd, doing business as Ladd Trucking; Sherri L. Ladd, doing business as Ladd Trucking,<br><br>Debtors.<br>_____<br><br>James W. Ladd; Sherri L. Ladd,<br><br>Appellants,<br><br>v.<br><br>Charles W. Ries,<br><br>Appellee. | * * * * * * * * * * * * * * * | Appeal from the United States Bankruptcy Appellate Panel for the Eighth Circuit. |

_____

Submitted: December 14, 2005
Filed: May 5, 2006

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

James and Sherri Ladd appeal from the Bankruptcy Appellate Panel (BAP) decision denying their motion to amend their asset schedules to claim their farm as exempt property under Minnesota law. Because we find that the doctrine of res

judicata does not preclude such action, we reverse and remand to the bankruptcy court for further proceedings.

## I.     BACKGROUND

When the Ladds first filed for bankruptcy in September 2002, they claimed their farm as an exempt homestead pursuant to the exemptions under federal bankruptcy law. 11 U.S.C. § 522(d)(1). The Ladds estimated their equity interest in the homestead to be $18,150. The Trustee filed a protective[1] objection to the homestead claim, and because the Ladds did not oppose the objection, a default order was entered denying the federal exemption. Fifteen months later, the Ladds filed amended schedules of assets and attempted to claim their farm as exempt property under Minnesota law. The Trustee again objected, this time asserting that res judicata precluded any amended claim of exemption for the homestead. The bankruptcy court agreed with the Trustee, as did the BAP. The BAP reasoned that a bankruptcy motion is the equivalent of a civil lawsuit and that to allow amendment after entry of judgment on such a motion would be "akin to allowing a party to add a new claim to a complaint after trial and entry of a judgment." In re Ladd, 319 B.R. 599, 603 (B.A.P. 8th Cir. 2005).

On appeal the Ladds claim that because Bankruptcy Rule 1009 allows them to amend schedules "at any time," they should not be precluded by res judicata principles from amending their schedules to claim the exemption under Minnesota state law. The Trustee argues that Rule 1009 does not contemplate amendment after a final order has been entered on a claimed exemption.

---

[1]If the Trustee does not timely object to a claim of exemption, the property will be deemed exempt, even if there is no basis for the exemption. Taylor v. Freeland & Kronz, 503 U.S. 638, 643-45 (1992). Therefore trustees commonly object, initially, to claimed exemptions.

## II.    DISCUSSION

We review the bankruptcy court's and appellate panel's conclusions of law de novo and factual findings for clear error.  In re Kaelin, 308 F.3d 885, 888 (8th Cir. 2002).  A bankruptcy court's decision regarding whether a debtor may file amended property schedules is reviewed for an abuse of discretion.  Id.

We find that the BAP erred in holding this action was barred by the doctrine of res judicata.  "Final judgment on the merits of an action precludes the same parties from relitigating issues that were or could have been raised in that action."  Lundquist v. Rice Mem'l Hosp., 238 F.3d 975, 977 (8th Cir. 2001) (per curiam).  Res judicata will apply where a final judgment was entered by a court of competent jurisdiction, if the same parties (or their privies) and the same cause of action were involved.  Banks v. Int'l Union Electron, 390 F.3d 1049, 1052 (8th Cir. 2004).  An action is the "same," for purposes of res judicata if it turns on the "same nucleus of operative facts as the prior claim."  Daley v. Marriott Int'l, Inc., 415 F.3d 889, 896 (8th Cir. 2005) (quotations omitted).  We have noted that res judicata should not be applied where one or both parties have "little motivation" or "little incentive" to fully litigate an issue.  Lovell v. Mixon, 719 F.2d 1373, 1377 (8th Cir. 1983).

Assuming that the judgment entered on the federal exemption was a "final" judgment, the problem with applying res judicata is that the same cause of action is not involved.  The Trustee argues that since the Ladds are claiming a homestead exemption in both actions, the two causes of action necessarily arise out of the same nucleus of operative facts.  We disagree, as there are significant differences between the federal exemption statute and the Minnesota exemption.

Debtors in Minnesota may elect between the federal exemptions found in 11 U.S.C. § 522(d), or elect the exemptions provided by state law, plus any federal exemptions, other than those given by section 522(d).  Christians v. Dulas, 95 F.3d

703, 704 n.1 (8th Cir. 1996). Debtors may not choose to exempt some assets under the federal scheme and others under the state scheme, however. 11 U.S.C. § 522(b). The primary difference between the federal and the Minnesota state homestead exemption is that the federal homestead exemption is limited by monetary value–when the Ladds filed in 2002, it allowed debtors to protect up to $34,850 for their homestead. 11 U.S.C. § 522(d)(1). On the other hand, Minnesota's exemption scheme essentially limits the homestead by acreage–160 acres–rather than amount. Minn. Stat. Ann. § 510.02; see In re Johnson, 880 F.2d 78, 82 (8th Cir. 1989) ("The [homestead] exemption is limited by acreage rather than by monetary value. Minn. Stat. § 510.02.").

The Ladds argue that they initially tried asserting the federal exemptions because they were more favorable for property other than the homestead. Under the federal "wildcard" exemption scheme, a debtor may protect other miscellaneous property in addition to the homestead. 11 U.S.C. § 522(d)(5). Pursuant to the wildcard federal exemptions, the Ladds also attempted to exempt approximately $1,600 worth of personal property in the form of cash in a checking account, artwork, clothing, and office materials such as a fax machine and filing cabinet. Once the Trustee objected to the homestead exemption, questioning the value of the Ladds' homestead interest, it became too costly to proceed with the federal exemptions because the Ladds would have had to obtain expert testimony and expend attorney fees for litigation regarding the value of their homestead. Since the value of the miscellaneous personal property was so low, it was not worth the expense of litigation over the valuation of their homestead. So rather than litigate the federal homestead issue, and assuming that they could amend their schedules at any time before the close of the bankruptcy case pursuant to Rule 1009, the Ladds chose not to fight the objection and allowed a default judgment on the federal exemption to be entered against them.

Although they could not exempt the miscellaneous personal property, under Minnesota law, their homestead would be protected up to $500,000 since it was a homestead used for agricultural purposes. Minn. Stat. Ann. § 510.02. Thus, there would be no serious question that the Ladds' equity in their homestead would qualify for the state exemption. There also is no dispute that the Ladds' homestead is within the 160 acre-limit imposed by Minnesota law. Id.

Under these circumstances, we find that the cause of action is not the same for res judicata purposes. The key operative facts of the federal exemption litigation would have been whether the Ladds' interest in the homestead was greater than the maximum allowed by federal bankruptcy law–$34,850. The key facts in a proceeding under the Minnesota exemption would be whether their homestead interest exceeded 160 acres or the $500,000 limit. The substance of what the debtors would have to prove in each action is substantially different. Under federal law, a debtor's focus would be on value, and under Minnesota law, it would be on acreage.

Since the Ladds had so little equity in their home, it made sense for them to initially proceed under the federal scheme and try to exempt other personal property pursuant to the wildcard statute. But there was "little motivation" and "little incentive" for the Ladds to engage in costly litigation defending the federal homestead exemption in order to exempt $1,600 worth of personal property. Lovell, 719 F.2d at 1377.

The Trustee argues that the Ladds should have asserted their intent to use the state homestead exemption before default judgment on the federal exemption was entered. But in the District of Minnesota at least, debtors could not have raised the Minnesota exemption as an "alternate" theory at the same time the federal exemption was asserted. See In re Cochrane, 178 B.R. 1011, 1017-18 (Bankr. D. Minn. 1995) (holding that "there is no basis under the Federal Rules of Bankruptcy Procedure for proposing an 'alternative' claim of exemptions at the same time as one asserts a 'main'

claim"). The bankruptcy forms also do not allow pleading in the alternative, as a Minnesota debtor must check either the federal or the state exemptions "box" on the Schedule C property exemption form. The Trustee conceded at oral argument that a debtor may not plead exemptions "alternatively." Requiring an already cash-strapped debtor to litigate an exemption simply for the purpose of raising the alternative theory makes little sense, especially when the debtor can accomplish the same result by amending pursuant to Rule 1009.

We have previously held that in bankruptcy cases, "the principle of res judicata should be invoked only after careful inquiry because it blocks 'unexplored paths that may lead to truth.'" Lovell, 719 F.2d at 1379 (quoting Brown v. Felsen, 442 U.S. 127, 132 (1979)). We see no reason to stray from that admonishment in this case.

If the Ladds are not barred by res judicata from asserting their state law homestead exemption, the question remains as to whether the bankruptcy court should have allowed amendment pursuant to Bankruptcy Rule 1009. Rule 1009(a) provides that a debtor may amend, at any time, as a matter of course before the case is closed. In Kaelin we noted that the general rule allows liberal amendment, but the ability to amend is not absolute, depending on the actions of the debtor and the consequences to the creditor. 308 F.3d at 889. Thus, the two recognized exceptions to the rule allowing liberal amendment under Rule 1009 are bad faith on the part of the debtor and prejudice to the creditor. Id.

The record is not clear as to why the debtors waited fifteen months between the time the federal exemptions were denied and they filed for state exemptions. However, neither the Trustee nor any other creditors have claimed bad faith or misconduct by the debtors. And, we find that the creditors would not be prejudiced by amendment. As the Ladds point out, the creditors essentially concede that the requisites of the Minnesota homestead exemption, i.e., ownership, occupancy and a parcel less than 160 acres, are not truly at issue for this property. See id. at 890

(holding that creditors can show prejudice if they would have asserted different positions had the exemption been claimed earlier).

Maximization of exemptions, especially the homestead exemption, is a fundamental policy of the Bankruptcy Code, In re Johnson, 880 F.2d at 83, which is likely why Rule 1009 allows liberal amendment. Because there have been no allegations of bad faith by the debtors or prejudice to the creditors, we hold that the bankruptcy court abused its discretion in not allowing the Ladds to amend their schedules to claim the Minnesota homestead exemption.

## III.   CONCLUSION

We reverse and remand to the bankruptcy court for proceedings consistent with this opinion.

_____